# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **Criminal No. 06-358 (JRT/JJG)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Ralph William Olson,** | |
| Defendant. | |

The above-entitled matter came before the undersigned Magistrate Judge on January 10, 2008 for the pretrial motions. Ann M. Anaya, Assistant U.S. Attorney, appeared on behalf of the Government. Reynaldo A. Aligada, Jr., Assistant Federal Defender, appeared on behalf of Mr. Olson (Olson).

Through a motion to suppress statements (Doc. No. 16), Olson asserts that a statement was taken from him in violation of his Fifth Amendment privilege against self-incrimination. The motion is referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

**A.    Background**

The relevant events occurred after Olson was arrested on November 9, 2007. At the time, Olson was living in a homeless shelter. Around noon that day, Special Agent Maureen Lese of the Federal Bureau of Investigation (FBI), and one other officer, went to the shelter to take Olson into custody.

The agents located Olson in a common area of the shelter. After identifying him, they led him into a nearby hallway, where they placed Olson in handcuffs. In accordance with the FBI's

ordinary practice, Olson's hands were cuffed behind his back.  The officers retrieved Olson's coat, and some currently prescribed medications, from his room.  They then moved Olson into their car.  The events at the shelter took about fifteen or twenty minutes.

Lese sat in the back of the car next to Olson, who remained in handcuffs with his hands behind his back.  According to Lese, Olson showed some signs of discomfort from the handcuffs and his position inside the car.  They proceeded to the office of the Minnesota Cyber Crimes Task Force, a trip that took about another ten or fifteen minutes.

During the trip, Lese gave Olson a *Miranda* warning.  When Olson was told of his right to counsel, he interjected and said that he could not afford an attorney.  Lese informed Olson that if he had no funds, an attorney would be appointed for him at his initial appearance, which was scheduled in court later that day.  At the end of the warning, Lese asked Olson if he understood his rights, and Olson said he did.  Lese then asked Olson if he was willing to talk, and he agreed.  But Lese did not initiate questioning at that time.

When they arrived at the task force office, Olson was moved to an interview room.  The handcuffs were removed at that time, and according to Lese, Olson was visibly relieved.  The handcuffs did not leave any marks or bruises, and he did not ask for or appear to require medical attention.

Once they were situated in the room, around thirty minutes after the car trip, Lese gave Olson another *Miranda* warning and asked if he had any questions.  Olson responded by asking about the person he should contact to acquire funds for an attorney.  Lese again informed Olson that an attorney would be appointed for him later that day.

Due to Olson's confusion, Lese asked another federal agent to join them in the interview room. Lese explained Olson's concerns to the agent.  She then reiterated to Olson that he had no

obligation to speak, and if he wanted an attorney, he could ask for one and have the attorney present during the interview. Lese also added that Olson could stop answering questions at any time.

During or after this explanation, Lese provided Olson with an advise of rights form. The form recites a full *Miranda* warning and adds, "If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time." The form includes a waiver provision, which states, "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." After reading the form aloud, Olson signed it.

Lese began questioning Olson. During this questioning, Olson made many incriminating statements. According to Lese, he had no problems understanding her questions, and he showed no intoxication. The agents made no threats or promises. And when Olson asked for a drink, the other agent got him one. There was no indication that Olson was in any discomfort. The entire interview lasted about thirty minutes.

**B.   Analysis**

Pursuant to the Fifth Amendment privilege against self-incrimination, once a suspect is taken into police custody, the person must receive a *Miranda* warning before being interrogated. *United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005). The parties do not contest that Olson was in custody and, after receiving a *Miranda* warning, then waived his privilege by agreeing to speak with the agents.[1]  *Cf. United States v. Hyles*, 479 F.3d 958, 962-63, 966 (8th Cir. 2007).

---

[1] In his motion papers, Olson cites both the Fifth and Sixth Amendments. If a person receives a *Miranda* warning and still decides to speak with police, then both the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel are waived. To the extent Olson raises his Sixth Amendment rights, the following analysis will be equally applicable. *See United States v. Garlewicz*, 493 F.3d 933, 936-37 (8th Cir. 2007).

The issue, instead, is whether Olson invoked his *Miranda* rights, in which case the officers were constitutionally required to cease their interrogation.

When deciding whether a suspect invoked the right to counsel, a court looks at whether the suspect made a "clear and unequivocal request for the assistance of counsel." *United States v. Kelly*, 329 F.3d 624, 630 (8th Cir. 2003). The circumstances are viewed from the perspective of a reasonable officer, not the suspect. *Davis v. United States*, 512 U.S. 452, 458-59 (1994). A question about the availability of counsel, such as "could I call my lawyer" or "do you know any good attorneys," is ordinarily not deemed enough to constitute a clear request for counsel. *See Kelly*, 329 F.3d at 630; *Dormire v. Wilkinson*, 249 F.3d 801, 805 (8th Cir. 2001).

The record shows that Olson inquired, at two different times, about how he could obtain counsel. And Olson was well advised that by talking to police, he was waiving his right to have counsel present. In these circumstances, he did not make a clear or unequivocal request, enough to advise a reasonable officer that Olson wanted counsel present during interrogation. As it was, Lese took great care to ensure that Olson understood his rights.

For this reason, Olson did not invoke his right to counsel, and his subsequent statements were not taken in violation of his privilege against self-incrimination. This Court concludes that his motion to suppress these statements is appropriately denied.

**C.    Recommendation**

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Olson's motion to suppress statements (Doc. No. 16) be **DENIED.**

Dated this 18th day of January, 2008.

s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

4

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **February 1, 2008**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.